**AMVEST CORPORATION, Plaintiff,**

v.

**José MAYORAL AMY, Lisa M. Penfield Kirby and their Conjugal Partnership, Defendants.**

**Civil No. 10–1484(DRD).**

United States District Court, D. Puerto Rico.

March 31, 2011.

Jose R. Gonzalez–Irizarry, Roberto Abesada–Aguet, McConnell Valdes, San Juan, PR, for Plaintiff.

Eduardo J. Mayoral–Garcia, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. PROCEDURAL HISTORY

Plaintiff Amvest Corporation ("Plaintiff" or "Amvest") filed suit against Defendants José Mayoral Amy ("Mayoral"), Lisa M. Penfield Kirby ("Penfield"), and their conjugal partnership (collectively, the "Defendants") instituting a collection of monies action and a foreclosure action.

On August 12, 2010, Defendants filed a motion to dismiss (Docket No. 7). Therein, Defendants first assert that the Court lacks jurisdiction over the *res* in question, a property located at Sabanera de Dorado (the "Dorado Property")[1] and an apart-

---

1. As described in the Property Registry, the Dorado Property is:

RURAL: Property Lot identified by number (24) in the Sabanera Dorado urbanization plan located in Barrio Higuillar of the municipality of Dorado, Puerto Rico, with a surface area of seven hundred and fifty-two point fifty (752.50) square meters, equal to zero point one thousand nine hundred and fifteen (0.1915) *cuerdas* (Puerto Rico land measurement unit), with the following boundaries: to the NORTH, Camino del

ment located at Bahía Marina Condominium in Culebra (the "Culebra Property,"[3] the Dorado and Culebra Properties collectively, the "Properties"), as other creditors have filed foreclosure proceedings in state court prior to the filing of the instant case. Defendants rely on the Supreme Court case of *Princess Lida v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939) to support the proposition that, in actions concerning real property, whichever court, either state or federal, has first assumed jurisdiction is entitled to exclusive jurisdiction over the matter. Defendants state that a creditor, Banco Popular de Puerto Rico ("Banco Popular"), initiated a foreclosure proceeding over the Dorado Property in state court on December 11, 2008 and obtained a favorable summary judgment on July 15, 2009. Defendants aver that another creditor, Doral Bank ("Doral"), also filed a complaint seeking foreclosure of the Dorado Property on January 26, 2009 in state court and obtained a default judgment on June 4, 2009. With respect to the Culebra Property, Defendants state that Banco Popular initiated a foreclosure proceeding in state court on December 2, 2008. All three of these actions were initiated in state court before the instant case was filed in federal court on June 2, 2010.

Secondly, Defendants move to stay the instant proceedings until Amvest joins other indispensable parties with interest in the Properties. Defendants argue that Banco Popular and Doral are indispensable parties because they are the holders of notes secured by the mortgages on the Properties. Furthermore, Defendants advocate that Banco Popular and Doral are indispensable parties because they would be stripped of their liens over the Properties should the Court grant Amvest the relief it seeks, namely to have the Properties sold free and clear of all liens.

Finally, Defendants move to dismiss the present action due to Amvest's failure to file the corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1.

On August 30, 2010, Amvest filed a response to Plaintiffs' motion to dismiss (Docket No. 11). First, Amvest argues that the state cases are not concurrent or parallel proceedings. Amvest avers that the instant action and the state proceedings involve different parties and arise out

---

Merlin Street; to the SOUTH, lot number thirty-five (35); to the EAST, lot number twenty-three (23); to the WEST, lot number twenty-five (25). A house is located within the property.

Said property is registered on Page 77 of Volume 254 of Dorado, property number 12,-675, in the Fourth Section of the Bayamón Property Registry.

3. As described in the Property Registry, the Culebra Property is:

URBAN: Horizontal Property: Apartment Number 201–B, residential Apartment of one level, located in the second floor of Building B of Bahia Marina Condominium, submitted to the horizontal property regime law, located at Barrio Playa Sardinas II of the municipality of Culebra, Puerto Rico, for an approximate superficial area of 546.563 pie square feet, equivalent to 50.772 square meters, its boundaries and distance are:

NORTH: In a distance of 12′4″, with common area;

SOUTH: In a distance of 12′4″, with common area;

EAST: In a distance of 44′2″, with common area;

WEST: In a distance of 44′2″, with Apartments 202–B.

This Apartment has a participation of 0.03830% in the general common elements of the Condominium.

**Physical Address:** Cond. Bahia Marina Resort, Apt. 201–B, Culebra PR 00775.

**Mailing Address:** Urb. Sabanera de Dorado, 24 Merlin St., Dorado, PR 00646.

Property is pending for recording at Entry number 187 of Volume 276 of the Book of Daily Entries of the Registry.

of different contract claims; more specifically, the genesis of Banco Popular's and Doral's cause of action arise from loan agreements whereas Amvest's arises from a settlement agreement. Second, Amvest advances that Banco Popular and Doral are not indispensable parties because they are simply not parties to the settlement agreement between Plaintiff and Defendants.

Additionally, Amvest cites case law from the Puerto Rico Court of Appeals holding that in a collection and foreclosure action, a secured creditor with a mortgage superior to that of plaintiff is not an indispensable party.[4] Furthermore, Amvest asserts that Banco Popular's and Doral's rights as secured creditors are statutorily protected under Puerto Rico Mortgage Law and will remain unaffected by the Court's judgment in the instant case.

Finally, Amvest states that Amvest filed its corporate disclosure statement on August 30, 2010 (Docket No. 10). Therefore, Amvest asserts that this filing renders Plaintiffs' argument to dismiss on failure to comply with Federal Rule of Civil Procedure 7.1 moot.

On October 5, 2010, the Court referred the pending motion to dismiss to Magistrate Judge Camille L. Velez–Rive for entry of her *Report and Recommendation* (Docket No. 18).

On January 21, 2011, Magistrate Judge Velez–Rive filed her *Report and Recommendation* (Docket No. 21). Therein, she recommended the District Court grant the motion to dismiss in part and deny in part. Interpreting the Supreme Court precedent of *Princess Lida* and the subsequent First Circuit case law, the Magistrate Judge recommended that Amvest's action to collect

monies should survive a motion to dismiss and advised the District Court to retain jurisdiction.

With regard to the foreclosure proceeding of the Dorado Property, the Magistrate concluded that it was undisputed that the state court had acquired jurisdiction over the Dorado Property. The Magistrate Judge observed that the Court of First Instance of Bayamon Superior Court issued a summary judgment on July 15, 2009 wherein the state court adjudicated Banco Popular's right of collection from the Dorado Property and the sell the property in a public auction. Additionally, Doral won a default judgment against the Defendants from the state court, wherein the bailiff was authorized to sell the Dorado Property at public auction should defendants not satisfy their debt obligations to Doral. In ascertaining the propriety of abstention, the Magistrate reviewed the leading Supreme Court case, *Colorado River. Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Upon performing a *Colorado River* analysis, the Magistrate Judge Velez–Rive resolved that the state and federal proceedings are parallel. She stated that, although there are different parties in the state and federal actions, they both seek foreclosure of the same property. The Magistrate further stated that the application of state mortgage law to the first and second mortgagors' rights over the real property would be dispositive of the junior mortgagors' rights, Amvests'.

Having determined that the state and federal actions are parallel, Magistrate Judge Velez–Rive reviewed a number of other factors pursuant to the second step

---

**4.** As explained more fully in footnote 10 of this *Opinion and Order,* Plaintiff failed to provide English translations of the cited cases from the Puerto Rico Court of Appeals. As such, the Court is unable to consider materials not translated into English.

of the *Colorado River* analysis. The Magistrate Judge remarked that the state court proceedings are more advanced that the federal court proceedings as the state court has already entered a summary judgment and a default judgment. In the interest of avoiding piecemeal litigation, the Magistrate advised the Court to abstain from exercising jurisdiction with regard to the Dorado Property.

With regard to the foreclosure proceeding of the Culebra Property, the Magistrate concluded that there is no evidence of a similar state foreclosure proceeding pending. Accordingly, Magistrate Judge Velez–Rive concluded that a *Colorado River* analysis was unnecessary and recommended that Defendants' motion to dismiss, with respect to the Culebra Property, be denied.

On November 22, 2010, Amvest filed a partial objection to the Magistrate's *Report and Recommendation* (Docket No. 22). Amvest first argues foreclosure actions filed by different creditors regarding the same property do not satisfy the "concurrent, parallel action" requirement under *Colorado River* in order to warrant abstention. Second, Amvest advances that accepting the *Report and Recommendation* would increase piecemeal litigation in that Amvest would pursue a collection action in federal court while simultaneously pursuing a foreclosure action in state court. Amvest avers that this result would be implausible as the foreclosure action is dependant upon the collection action. Moreover, Amvest asserts that Puerto Rico law permits several creditors to proceed with independent foreclosure proceedings against the same property because their respective rights, relative to each other, are clearly defined under Puerto Rico law.

On the same day, November 22, 2010, Defendants filed a partial objection to the Magistrate Judge's *Report and Recommendation* (Docket No. 23). Defendants state that defense counsel had inadvertently failed to attach the state court's foreclosure proceedings for the Culebra Property to Defendants' motion to dismiss. To correct this oversight, on August 13, 2010, Defendants submitted an informative motion to the Court (Docket No. 8) which contained a state court complaint filed by Banco Popular seeking to foreclose on the Culebra Property. On September 13, 2010, Defendants submitted a certified copy of this complaint in English (Docket No. 15). As a result of this filing error, Defendants suggest that the Magistrate overlooked the foreclosure proceedings against the Culebra Property and request that the Court apply the Magistrate's analysis of the Dorado Property to the Culebra Property.

## II. REFERRAL TO THE MAGISTRATE JUDGE

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); *see also* Local Rule 72(a); *see also Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED. R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the

court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993)(stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987)(holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996)(*en banc* )(extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)(en banc)(appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain er-

ror"); *see also Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001)(finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990)(finding that "when no objections are filed, the district court need only review the record for plain error").

In the instant case, Plaintiff and Defendants have timely filed objections to the Magistrate Judge's *Report and Recommendation* (Docket Nos. 22 and 23, respectively). Thus, the Court reviews the portions of the *Report and Recommendation* to which objections were made *de novo;* the Court reviews the unopposed portions of the *Report and Recommendation* for plain error.

Upon a thorough *de novo* review of the record, the Court hereby **ADOPTS IN PART** and **DENIES IN PART** the Magistrate's *Report and Recommendation* **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

### III. RELEVANT FACTUAL BACKGROUND

The factual background is primarily taken from the Magistrate Judge's *Report and Recommendation* and the *Complaint* (Docket No. 1). While both Plaintiff and Defendant filed partial objections to the Magistrate's *Report and Recommendation* (Docket No. 22 and 24), only Defendants object to the Magistrate's presentation of the facts. The Court shall herein address Defendants' objections to Magistrate Judge Velez–Rive's presentation of the facts (Docket No. 21) *de novo* and the Court will review the remainder of the *Report and Recommendation* for plain er-

ror to ascertain if she has indeed included all the facts which are relevant to the instant inquiry. Upon completion of its review, the Court proceeds to recite the following alleged facts, noting its findings as to Defendants' objections.

In November of 1988, Mayoral pled guilty to wire fraud, delivery of fraudulent mail and forgery of signature with intent to commit bank fraud in the U.S. Southern District Court of Florida (Case No. 88–40–CR–RYSKAMP). Mayoral was sentenced to five years imprisonment and ordered to make restitution of $2,000,000 to Amvest, the main victim of his fraudulent scheme.

Between 1988 and 2006, Mayoral and his wife, Penfield, paid Amvest $320,653.70. On November 14, 2006, Defendants entered into a settlement agreement with Amvest for the remaining balance, $1,679,346.30. Under that agreement, Defendants were to pay Amvest $350,000 in two installments. Defendants were to pay $100,000 by the end of 2006 and $250,000 by the end of 2007. Additionally, Mayoral and Penfield secured these obligations with a $300,000 mortgage on the Dorado Property and with a $50,000 mortgage on the Culebra Property. In exchange, Amvest consented to waive the remaining balance on the Court imposed restitution obligation. In the event that Defendants breached the settlement agreement, Defendants would then be liable for the re-

maining $1,679,346.30, minus any payments made.

In December of 2006, Defendants disbursed the first payment of $100,000 to Amvest pursuant to the settlement agreement. However, the following year, Defendants failed to pay the second payment of $250,000. Amvest granted Defendants a three month extension with an interest rate of 10.25%. Defendants paid three separate payments of $2,135.42 each.[5]

As Defendants' failure to pay the second payment of $250,000 constitutes a breach of the settlement agreement and thereby reinstates the original restitution amount, Amvest is owed $1,572,940.04 of principal and $239,782.73 in interest,[6] plus any costs and expenses related to enforcing Amvest's rights under the two mortgages, pursuant to a Mortgage Note Pledge and Security Agreement.

On December 2, 2008, Banco Popular filed a collection and foreclosure action on the Culebra Property with the Court of First Instance of Fajardo Superior Court. Banco Popular sought to collect on a promissory note for the principal amount of $200,000 and requested that the Culebra Property be sold at a public auction in order to satisfy this debt obligation.[7]

On June 4, 2009, the Court of First Instance of Bayamon Superior Court issued a default judgment in favor of Doral against Defendants for $107,576.69.[8] If

---

**5.** The three month extension gave Defendants a new deadline of March 31, 2008 for the $250,000 payment. Defendants' first two payments were within this extension period, while the third payment was outside of this period as it was received by Amvest on April 15, 2008.

**6.** The interest payment is based upon a rate of 4.25% per year, with a per diem of one hundred eighty three dollars and fifteen cents ($183.15).

**7.** Defendants objected to the exclusion of this fact from the *Report and Recommendation*. The Court finds that the omission was an excusable oversight by the Magistrate (and, as Defendants suggest, likely caused by Defendants' filing errors). The Court hereby finds that Banco Popular complaint regarding the Culebra Property pertinent to the present inquiry and accordingly, includes it in the Court's recitation of the facts.

**8.** This $107,576.69 is comprised of $97,098.79 for principal under a loan agree-

the Defendants have not paid the debt in full, the Superior Court authorized the Dorado property to be sold in a public auction.

On July 15, 2009, the Court of First Instance of Bayamon Superior Court issued a summary judgment in favor of Banco Popular. The Superior Court found that Defendants had executed a promissory note on behalf of Banco Popular for $294,000 and that the note was secured by the Dorado Property. The Superior Court determined that Defendants had failed to make monthly payment pursuant to the note and therefore granted summary judgment in favor of Banco Popular. Therein, the Superior Court ordered the Dorado Property to be sold in a public auction in the event that Defendants did not repay the sums owed to Banco Popular.

## IV. MOTION TO DISMISS

■ Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 129 S.Ct. 1937. First, the

ment; $297.90 in late fees; $180 in other

Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009)(quoting *Iqbal,* 129 S.Ct. 1937)(internal quotation omitted).

■ Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir. 2009).

■ A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596.

## V. LEGAL ANALYSIS

■ In *Colorado River,* the Supreme Court held that, in certain circum-

expenses; and $10,000 for attorneys' fees.

stances, a court may abstain from hearing a case "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236. Courts consider eight factors in determining whether such limited circumstances exist:

> (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*United States v. Fairway Capital Corp.,* 483 F.3d 34, 40 (1st Cir.2007). These factors are not "exhaustive, nor is any one factor necessarily determinative." *KPS & Assocs. v. Designs by FMC, Inc.,* 318 F.3d 1, 10 (1st Cir.2003). Thus, there is no talismanic factor.

■ In arguing for abstention, Plaintiffs cite to a Supreme Court case, *Princess Lida,* which held that "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other." *Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939). However, the Court does not need to examine *Princess Lida* separately from the *Colorado River* abstention analysis because the First Circuit has treated *Princess Lida* as the first factor to be considered in a *Colorado River* inquiry. *See Bergeron v. Estate of Loeb,* 777 F.2d 792, 799 (1st Cir.1985) (discussing application of *Princess Lida* doctrine in *Colorado River* context).

## A. COLLECTION OF MONIES

■ The Court concurs with the Magistrate's assessment that there is no merit to Defendants' averment as to lack of jurisdiction for Amvest's collection of monies cause of action. There is simply no concurrent, parallel state proceeding by Amvest, or by any other entity, to enforce a collection of monies *arising from the Amvest's 2006 settlement agreement.* Our *Colorado River* analysis, therefore, ends here.

The Court agrees with the Magistrate and finds that abstention would be imprudent with respect to Amvest's collection of monies action and the Court therefore retains jurisdiction. Defendants' motion to dismiss Amvest's collection of monies action is hereby **DENIED.**

## B. FORECLOSURE ON THE DORADO PROPERTY

■ In applying the *Colorado River* doctrine to Amvest's foreclosure of the Dorado Property, the Court remains cognizant that "[o]f all the abstention doctrines, [*Colorado River* ] is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal." *Jimenez v. Rodriguez–Pagan,* 597 F.3d 18, 27 (1st Cir.2010) (quoting *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236).

■ As a threshold matter, the District Court must first establish if there are parallel proceedings in state and federal court. *See IFC Interconsult, AG v. Safeguard Int'l Partners,* 438 F.3d 298, 306 (3rd Cir.2006)("The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding."); *Scottsdale Ins. Co. v.*

*Detco Indus., Inc.,* 426 F.3d 994, 996 (8th Cir.2005) ("A threshold issue in this case is whether parallel proceedings were pending in the state court at the time [plaintiff] brought its declaratory judgment action."). If the proceedings are not parallel, then the *Colorado River* inquiry comes to an end. *See Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 395 n. 7 (5th Cir.2006)("This doctrine only applies when there are parallel proceedings pending in federal and state court."); *Stewart v. W. Heritage Ins. Co.,* 438 F.3d 488, 491 n. 3 (5th Cir.2006); *see also R.R. Street & Co. v. Vulcan Materials Co.,* 569 F.3d 711, 714 (7th Cir.2009)(noting that prerequisite for Colorado River abstention is "whether two proceedings are parallel"). Yet, if the proceedings are parallel, then the Court must next consider a set of non-exclusive factors. *See Tartak v. Tartak Del Palacio,* 2010 WL 3960572 at \*7, 2010 U.S. Dist. LEXIS 105906 at 22 (D.P.R. Oct. 4, 2010); *Tyrer v. City of S. Beloit, Illinois,* 456 F.3d 744, 751 (7th Cir.2006) ("[O]nce [the Court] is established that the suits are parallel, the [C]ourt must consider a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances.")(internal quotation marks omitted).

■ "The proceedings are considered to be parallel if they involve the same parties and substantially identical claims, raising nearly identical allegations and issues." *Tartak,* at \*7, 2010 U.S. Dist. LEXIS 105906, at 22 (internal quotations omitted). While the Court notes that the state proceedings involve different plaintiffs, but the same defendants, as the federal proceedings, the Court concludes that the two actions involve substantially identi-

cal claims, raising nearly identical allegations and issues. Therefore, the Court finds that the state proceedings and the federal proceedings are sufficiently parallel.

■ Having determined that parallel state litigation exists, the Court is compelled to perform the second step of the *Colorado River* analysis and review the aforementioned eight enumerated factors. As to the first factor,[9] the Court concludes that the state court has assumed jurisdiction over the *res*. The state court actions by Banco Popular and Doral were filed prior to the instant case and the state court granted summary judgment and a default judgment, respectively. In both the summary judgment and the default judgment, the state court ordered the bailiff to carry out a public auction in the event that Defendants are unable to otherwise satisfy their debts. Thus, the state court has clearly assumed control, and thus jurisdiction, over the *res*.

As to the second factor, the Court determines that federal forum is not inconvenient. Not only is the District Court sitting in San Juan physically close to the *res*, but also there is little need to bring any witnesses or present any evidence in a foreclosure action. *See Villa Marina Yacht Sales,* 915 F.2d at 15 (noting that the inconvenient forum factor is "concerned with the physical proximity of the federal forum to the evidence and witnesses").

The third factor requires the district court to determine whether there is a risk that "piecemeal litigation" would result if the case was held in a federal forum. The Magistrate Judge found that there is such a risk and this District Court agrees. The

---

9. The Second and Ninth Circuits have held that this factor is dispositive in the *Colorado River* abstention analysis. *See 40235 Washington Street Corp. v. W.C. Lusardi,* 976 F.2d 587, 589 (9th Cir.1992); *FDIC v. Four Star Holding Co.,* 178 F.3d 97, 102 (2d Cir.N.Y. 1999).

First Circuit has found that a risk of piecemeal litigation arises when "a ruling from the [state court] ... would render our opinion merely advisory." *Rivera–Feliciano v. Acevedo–Vila*, 438 F.3d 50, 62 (1st Cir.2006). Amvest argues that by abstaining there is a greater risk of piecemeal litigation because Amvest would have to pursue a collection action in federal court while simultaneously pursuing a foreclosure action in state court. The Court notes Amvest's practical concern, however, the Court finds that the stronger consideration is that this Court's opinion would be merely advisory as the state court has already granted summary judgment for Banco Popular and a default judgment for Doral over the *res.*

With regard to the fourth factor, neither party disputes that the state court obtained jurisdiction before the District Court. As previously mentioned, the state court has granted Banco Popular summary judgment regarding the Dorado Property and the state court, in another matter, has also granted Doral a default judgment over the Dorado Property. Seemingly, the public auction of the Dorado Property is the only action that remains outstanding in state court. This factor, accordingly, weighs heavily in favor of abstention.

As to the fifth factor, this case presents one of the "rare circumstances [where] the presence of state-law issues may weigh in favor of [the] surrender" of federal jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The applicable law in the instant case, foreclosure law, is a creature of state law—not federal law.

As to the sixth factor, the Court finds that the state court is perfectly adequate to protect the parties interests. As Amvest has pointed out, Puerto Rico Mortgage Law protects and preserves the rights all creditors, all senior and junior lien holders, in the event that one creditor seeks foreclosure of the same property. As Amvest's interests in the Properties are already protected under Puerto Rico law, Amvest will not be harmed by allowing other creditors to pursue a foreclosure in state court.

The seventh factor is the "vexatious or contrived nature of the federal claim." The Court concludes that there is nothing vexatious or contrived about Amvest's federal lawsuit. *See Jimenez v. Rodriguez–Pagan*, 597 F.3d at 28; *see KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 11 (1st Cir.2003).

 Finally, the eighth factor is not pertinent to the instant inquiry. *Id.* The First Circuit has stated that this factor is relevant where a plaintiff attempts to evade the policy in 28 U.S.C. § 1441; that statute provides that only a defendant is to remove a civil suit from state court to federal court where federal courts have original jurisdiction. *Villa Marina Yacht Sales*, 915 F.2d at 14. However, this factor is irrelevant where, as in the instant case, the Defendants have evinced no desire to remove the instant action from state court to federal court. *See Fairway Capital*, 483 F.3d at 44.

 The Court finds that the factors, considered as a whole, strongly support abstention. Reflecting upon "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," the Court declines to exercise exclusive or concurrent jurisdiction in the present foreclosure proceedings. *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236; *see Jimenez v. Rodriguez–Pagan*, 597 F.3d at 31 (finding abstention appropriate because of the possibility for "inconsistent dispositions of a res, the heightened po-

tential for piecemeal litigation, the exclusive reliance on Puerto Rico law, the unsettled nature of aspects of that law that would inform our jurisdictional analysis, and the more advanced progress of the litigation in the Puerto Rico court system."). While there is a "heavy presumption favoring the exercise of jurisdiction," the Court finds that the instant case presents a rare exception and satisfies *Colorado River*'s demanding test for abstention. *Villa Marina Yacht Sales*, 915 F.2d at 13. Accordingly, the Court accepts the Magistrate's recommendation and abstains from jurisdiction in Amvest's foreclosure action for the Dorado Property. Therefore, Defendants' motion to dismiss Amvest's foreclosure action for the Dorado Property is hereby **GRANTED.**

### C. FORECLOSURE ON THE CULEBRA PROPERTY

Magistrate Judge Velez–Rive concluded that there was no evidence of a similar state pending procedure as to the Culebra Property which would warrant examining the *Colorado River* factors. In light of Defendants' error in originally filing Banco Popular's complaint seeking foreclosure of the Culebra Property with the motion to dismiss (Docket No. 7), the Court determines that the Magistrate merely made an excusable factual oversight when examining the record regarding the Culebra Property. Having reviewed Banco Popu-

lar's complaint seeking foreclosure of the Culebra Property (Docket No. 15–1), the Court finds that this evidence is outcome determinative. Although the record contains only evidence of a complaint seeking foreclosure of the Culebra Property and not a summary judgment or default judgment in favor of the creditors as with the Dorado Property, the Court's prior *Colorado River* analysis of the Dorado Property, nevertheless, applies wholesale to the Culebra Property. Accordingly, the Court abstains from jurisdiction in Amvest's foreclosure action for the Culebra Property and Defendants' motion to dismiss the Culebra Property is hereby **GRANTED.**

### D. INDISPENSABLE PARTIES

The Court finds that Defendants' argument that Banco Popular and Doral must be joined as indispensable parties pursuant to Rule 19(a) of the Federal Rules of Civil Procedure is without merit. As previously mentioned, Puerto Rico Mortgage Law preserves the rights of all creditors, all senior and junior lien holders, in the event that one creditor seeks foreclosure of the same property. *See* P.R. Laws Annot. Tit. 30 §§ 2460, 2701–2735. Thus, a creditor is not an indispensable party in a foreclosure action brought by another creditor, regardless of that creditor's priority, since all creditors' rights and priorities are preserved under state mortgage law.[10] However, as the Court is ab-

---

**10.** Amvest cites Puerto Rico state law cases of *Velez Velez v. Francisco Gonzalez*, 2001 PR App. LEXIS 1030 (P.R.Ct.App. Oct. 24, 2001) and *Orlando Perez Rosa, Recurrida v. Ana Morales Rosado, Et Al.*, Peticionarios, 2007 TSPR 171 (P.R.2007) for the proposition that a secured creditor is not an indispensable party to a foreclosure action. These cases are only available in the Spanish language and Amvest has not provided the Court with a certified English translations of those cases in violation of the Local Rules. *See* Local Rule 5(g) requiring that "[a]ll documents not in the

English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts." Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 5(g) (2009); *see also* 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language.").

staining under *Colorado River* to entertain the mortgage foreclosure cause of action, there is no necessity to tackle the issue of senior and junior liens in the instant case.

## VI. CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS IN PART** and **DENIES IN PART** Magistrate Judge Velez–Rive's *Report and Recommendation* (Docket No. 21). Accordingly, Defendants' *Motion to Dismiss* (Docket No. 7) is **DENIED** as to Amvest's collection of monies cause of action and is **GRANTED** as to Amvest's foreclosure cause of action for the Dorado Property and the Culebra Property.

**IT IS SO ORDERED.**

"It is well settled that parties who wish to rely on materials which are not in English must provide certified English translations of those materials." *P.R. Highway & Transp. Auth. v. Redondo Constr. Corp.*, 2011 WL 1238813 at *2, 2011 U.S. Dist. LEXIS 30266 at 5 (D.P.R. Mar. 23, 2011); *see Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir.2008); *see also United States v. Rivera–Rosario*, 300 F.3d 1, 8 n. 9. (1st Cir.2002) ("The policy interest in keeping the District of Puerto Rico as an integrated part of the federal judiciary is too great to allow parties to convert that court into a Spanish language court at their whim."). Accordingly, the Court is unable to consider the untranslated cases cited by Amvest.